# UNITED STATES DISTRICT COURT
for the
District of Colorado

In the Matter of the Search of  
Information associated with  
soledadmuernos@yahoo.com, (hereinafter the ) 
"SUBJECT ACCOUNT") that is in the )  Case No.  21-sw-00038-STV
possession of Oath Holdings Inc. (hereinafter )
"PROVIDER"), whose office is located at 701 )
First Avenue, Sunnyvale, CA 94089, more )
fully described in Attachment A, attached )
hereto.

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

located in the ___State and___ District of ___California and elsewhere___ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 1519 | Falsification of Records in Federal Investigations |

The application is based on these facts:
- ☒ Continued on the attached affidavit, which is incorporated by reference.
- ☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*s/Christopher Eric Gann*  
*Applicant's signature*

Special Agent Christopher Eric Gann  
FDA-OCI  
*Printed name and title*

Sworn to before me and: ☐ signed in my presence.  
☒ submitted, attested to, and acknowledged by reliable electronic means.

Date: January 20, 2021  
*Judge's signature*

City and state: Denver, CO  
Scott T. Varholak, U.S. Magistrate Judge  
*Printed name and title*

## ATTACHMENT A

### **DESCRIPTION OF LOCATION TO BE SEARCHED**

      The account and information associated with soledadmuernos@yahoo.com, (hereinafter and in Attachment B, the "SUBJECT ACCOUNT") that is in the possession of Oath Holdings Inc. (hereinafter and in Attachment B, "PROVIDER"), whose office is located at 701 First Avenue, Sunnyvale, CA 94089.

## ATTACHMENT B

### DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED

Pursuant to 18 U.S.C. § 2703, PROVIDER as described in Attachment A is hereby ordered as follows:

### I.   SEARCH PROCEDURE

a. The search warrant will be presented to personnel of the PROVIDER, who will be directed to isolate the account and files described in Section II below regardless of whether such information is stored, held or maintained inside or outside of the United States;

b. In order to minimize any disruption of computer service to innocent third parties, the PROVIDER'S employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein;

c. The PROVIDER'S employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to the agent who serves the search warrant; and

d. Law enforcement personnel will thereafter review all information and records received from the PROVIDER'S employees to determine the information to be seized by law enforcement personnel specified in Section III.

### II. FILES AND ACCOUNTS TO BE DISCLOSED BY THE PROVIDER'S EMPLOYEES

a. For the SUBJECT ACCOUNT listed in Attachment A the PROVIDER shall disclose the following information regardless of whether it is held inside or outside the United States, and the disclosure shall include all information even if deleted yet still available to the PROVIDER, and all information preserved pursuant to a request under 18 U.S.C. § 2703(f):

> 1. The contents of all communications, including e-mails and attachments, Oath Holdings Inc. voice communications, and text communications (including SMS and MMS), associated with the SUBJECT ACCOUNT including deleted, stored, or preserved (pursuant to 18 U.S.C. § 2703(f) or otherwise) e-mails sent to and from the account, draft e-mails, existing printouts of any such e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail, and the true and accurate header information including the actual IP addresses of the sender and the recipient of the e-mails, and all attachments;

2. All records and information regarding locations where the account was accessed or used, including all data stored in connection with Location Services;

3. All records pertaining to communications between the PROVIDER and any person regarding the account, including contacts with support services and records of actions taken; and

4. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to the provider (including, but not limited to, the keybag.txt and fileinfolist.txt files).

5. All records or other information regarding the identification of the SUBJECT ACCOUNT, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses, phone numbers, or other identifying information provided during registration, other associated e-mail and other online accounts, all screen names associated with the subscribers and/or accounts, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

6. The services the SUBJECT ACCOUNT utilized and all records generated by those services;

7. All records or other information stored at any time by an individual using the SUBJECT ACCOUNT, including address books, contact and buddy lists, calendar data, pictures, and files;

8. All records pertaining to communications between the PROVIDER and any person regarding the SUBJECT ACCOUNT, including contacts with support services and records of actions taken.

9. For all information responsive to this warrant, regardless of whether such information is stored, held or maintained inside or outside of the United States, the physical location or locations where the information is stored.

b. The Provider is hereby ordered to disclose the above information to the government within 14 days of the issuance of this warrant.

**III. INFORMATION TO BE SEIZED BY LAW ENFORCEMENT PERSONNEL**

All information described above in Section II that constitutes evidence and/or instrumentalities of crimes involving violations of federal laws relating to violations of 21 U.S.C. § 1512 (the "**SUBJECT OFFENSE**") including the contents of communications,

associated with the e-mail account **soledadmuernos@yahoo.com**, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

1. Records and information, electronic mail, attachments, and related computer files that identify the account user, individuals, or correspondents, or that identifies the means or methods used to commit the SUBJECT OFFENSE;

2. Records and information, electronic mail, attachments, and related computer files that evidences or identifies means of payment relating to the SUBJECT OFFENSE;

3. "Address books" or other lists of correspondents that identifies individuals or correspondents involved in the SUBJECT OFFENSE;

4. Saved "chats" or other communications that relate to the SUBJECT OFFENSE or that identify individuals involved in the SUBJECT OFFENSE;

5. Records, information, documents, visual depictions, and materials pertaining to the SUBJECT OFFENSE;

6. Records, information, notes, documents, records, or correspondence, in any form and medium pertaining to the SUBJECT OFENSE, or that may be helpful in identifying any such offense;

7. Records and information, notes, documents, records, or correspondence, in any form and medium between and among SOLEDAD MUERNOS and ALICIA TANGEMAN and others that relate to the SUBJECT OFFENSE;

8. Records and information relating to the state of mind of the user of the SUBJECT ACCOUNT and others in communication with that account in relation to the SUBJECT OFFENSE;

9. Records and information, notes, documents, records, or correspondence, in any form and medium from, relating to assistance in conducting a research study or collecting data;

10. Images, correspondence, and other records that help identify the users of the SUBJECT ACCOUNT;

11. Location information associated with the SUBJECT ACCOUNT that may help show where and who is involved in the SUBJECT OFFENSE;

12. Information about the devices used to access the SUBJECT ACCOUNT that is evidence of or identifies persons involved in the SUBJECT OFFENSE;

13. Records relating to who created, used, or communicated with the SUBJECT ACCOUNTS or identifiers, including records about their identities and whereabouts.

If the government identifies seized communications to/from an attorney, the investigative team will discontinue review until a filter team of one or more government attorneys and other

government personnel, as needed, is established. The filter team will have no previous or future involvement in the investigation of this matter. The filter team will identify and segregate communications to/from attorneys, which may or may not be subject to attorney-client privilege. At no time will the filter team advise the investigative team of the substance of any of the communications to/from attorneys. The filter team then will provide all communications that do not involve an attorney to the investigative team, and the investigative team may resume its review. If the filter team believes that any of the communications to/from attorneys are not actually privileged (e.g., the communication includes a third party), and if the investigation is not covert, the filter team will first seek to obtain agreement from the appropriate defense counsel before providing these attorney communications to the investigative team. If consulting with defense counsel is not possible or does not produce an agreement, the filter team will obtain a court order before providing these attorney communications to the investigative team.

**IV. ORDER OF NON-DISCLOSURE AND TO KEEP ACCOUNT ACTIVE**

a.   Pursuant to 18 U.S.C. §§ 2703(b)(1)(A) and 2705(b), the Court orders PROVIDER not to disclose the existence of this search warrant to any person, including the subscriber, other than its personnel essential for compliance with the execution of this warrant.

b.   The Court further orders PROVIDER to continue to maintain the SUBJECT ACCOUNT in an open and active status so as not to disrupt this ongoing investigation.

**V.   PROVIDER PROCEDURES**

a.   The PROVIDER shall deliver the information set forth above within 14 days of the service of this warrant and the PROVIDER shall send the information to:

   Special Agent Christopher Gann
   25587 Conifer Rd.
   Suite 105-506
   Conifer, Colorado 80433
   Phone: (832) 540-6688
   E-mail: Christopher.gann@fda.hhs.gov

   b.  Pursuant to 2703(g), the presence of an agent is not required for service or execution of this warrant.

**VI.  DEFINITIONS**

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such

4

as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

5

# AFFIDAVIT

I, Christopher Gann, Special Agent with the Food and Drug Administration- Office of Criminal Investigations (FDA-OCI) being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief:

## INTRODUCTION AND AGENT BACKROUND

1. I am currently employed as a Special Agent with the Food and Drug Administration-Office of Criminal Investigations (FDA-OCI). I have been a Special Agent with FDA-OCI since March of 2014. Prior to my current assignment, I was a Special Agent with Homeland Security Investigations for 13 years. I have successfully completed the Criminal Investigator Training Program and the FDA's Special Agent Training Program at the Federal Law Enforcement Training Center. In addition, I am a licensed Certified Fraud Examiner through the Association of Certified Fraud Examiners. During my 19-year career as a federal investigator, I have conducted a wide range of criminal investigations involving misbranding and adulterated drugs, mail fraud, wire fraud, narcotics smuggling, money laundering, and diversion of controlled substances. As a Special Agent with FDA-OCI, I am responsible, among other duties, for conducting criminal investigations involving violations of the Food, Drug, and Cosmetic Act ("FDCA"), Title 21 U.S.C. 301-399, and other applicable violations of Title 18 of the United States Code.

2. I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Oath Holdings Inc., LLC (hereafter "Oath Holdings Inc.," or "Provider") to disclose to the government records and other information, described in **ATTACHMENTS A and B** incorporated by reference, that constitute evidence, fruits and instrumentalities of violations 18 U.S.C § 1519 (Falsification of Records in Federal Investigations) (hereinafter the "SUBJECT OFFENSE") including the contents of communications associated with the e-mail account soledadmuernos@yahoo.com (hereinafter the "SUBJECT ACCOUNT") described in **ATTACHMENTS A and B** that are stored at premises owned, maintained, controlled, or operated by: Oath Holdings Inc., a company located at 701 First Avenue, Sunnyvale, CA 94089.

3. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of the SUBJECT OFFENSES are located in the places described in **ATTACHMENTS A** and **B**. Witnesses and victims, whose true identities are known to me, are identified in this affidavit by reference to their respective titles and roles.

4. The facts set forth in this affidavit are based on my personal knowledge as the investigation's Case Agent; my training and experience; knowledge obtained from other

1

individuals including law enforcement officers/personnel; and my review of reports and other evidence. Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I have hearsay knowledge.

## JURISDICTION

5. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## THE SUBJECT OFFENSE

6. 18 U.S.C. § 1519 provides: "Whoever knowingly . . . falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . , or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both."

7. There is no requirement that the matter or investigation have been pending or imminent at the time of the obstruction, but only that the acts were taken in relation to or in contemplation of any such matter or investigation. Pattern Crim. Jury Instr. 5th Cir. 2.65 (2019). The government is not required to prove that the defendant specifically knew the matter or investigation was within the jurisdiction of a department or agency of the United States. *Id.* In other words, the government need not prove that the defendant knew she was obstructing, impeding, or influencing a matter that was federal in nature. *Id.*

## THERE IS PROBABLE CAUSE TO BELIEVE THAT TANGEMAN COMMITED THE SUBJECT OFFENSE AND THAT EVIDENCE, FRUITS, AND INSTRUMENTALITIES OF THE OFFENSE ARE LOCATED IN THE SUBJECT ACCOUNT

8. The United States is investigating the theft of controlled substances by Alicia Nickel-Tangeman (hereinafter, "Tangeman"), who was employed by UC Health Hospital in Colorado Springs, CO as a registered nurse. The investigation concerns possible violations of 21 U.S.C. § 843(a)(3) (theft of controlled substances by deception) and 18 U.S.C. § 1365(a) (tampering with a consumer product), among other offenses.

9. The investigation began after patient A.F. reported to the hospital where Ms. Tangeman worked in Colorado Springs, Colorado, in May 2019 that he observed Ms. Tangeman use a key to unlock his Patient Controlled Analgesia (PCA) machine and remove hydromorphone, a schedule II-controlled substance, from the syringe inside the machine that was intended for patient administration. The patient reported that Ms. Tangeman squirted medication out of the PCA syringe into small cups, then returned the syringe to the PCA. Records from the PCA that record access to the machine (but do not identify who

specifically accessed the machine) corroborate the patient's report. The patient stated that Ms. Tangeman told him that she was accessing his PCA because she was conducting a "study" on the effectiveness of PCA pumps on pain relief in hospital patients.

10. On July 3, 2019, I met with hospital personnel regarding the possible diversion of controlled substances by Ms. Tangeman. The hospital's Pharmacy Director provided evidence the hospital had gathered indicating that Ms. Tangeman was diverting, or stealing, controlled substances from the hospital. This included information related to patient A.F. The Pharmacy Director stated that records show that Ms. Tangeman was suspected of diverting hydromorphone from A.F.'s PCA machine on multiple occasions. He explained that A.F. was not Ms. Tangeman's patient, and there was no legitimate reason for her to access his PCA pump.

11. On July 9, 2019, DEA Diversion Investigator Kathryn Kohman, Colorado Springs Police Detective Juhl, and I interviewed Ms. Tangeman at her residence in Woodland Park, CO regarding the alleged diversion.

12. During the interview, Ms. Tangeman stated that she did not divert drugs from patient A.F. and that she was accessing his PCA not to steal drugs but because she was involved in collecting data on PCA pumps for her nurse friend, "Sol." Ms. Tangeman stated she believed "Sol's" first name is Soledad. Ms. Tangeman stated that she did not recall Sol's last name nor did she have a contact number for her. Ms. Tangeman reported that "Sol" used to work with her at Salinas Valley Hospital located in California. Ms. Tangeman stated "Sol" reached out to her in April 2019 and requested her assistance in conducting a study on the effectiveness of the PCA pump. Ms. Tangeman stated that she received permission from the hospital's Research Department to conduct the study.

13. Also during the interview, Ms. Tangeman produced to me a print-out of an e-mail that she stated was from "Sol" but the "from" and "date" fields had been marked out with a pen. In the e-mail, the sender provides details on an alleged PCA study and requests Ms. Tangeman's participation. A close review of the image taken by me of the e-mail shows that the e-mail address of the sender is the SUBJECT ACCOUNT.

14. Below is the image I captured of the e-mail from the SUBJECT ACCOUNT during the interview of Ms. Tangeman on July 9, 2019.

[CONTINUED ON NEXT PAGE]



15.     After Ms. Tangeman shared the above information, I informed Ms. Tangeman twice that it was a crime to lie to or be dishonest with a federal agent. Ms. Tangeman did not change or retract her story.

16.     On June 12, 2019, Colorado Springs Detective Juhl interviewed the hospital's Director of Research Administration. The Director stated that Tangeman did not have approval to conduct a research study and that numerous steps would have to have been completed in order to approve such a research study. In addition, the Director stated Tangeman did not reach out to her department to request permission to conduct the study.

17.     On July 29, 2019, I served a request for records to Salinas Valley Hospital in California, requesting, among other things, to verify past or current employment of a Soledad Muernos. The hospital stated they had no nurse employee named Soledad Muernos at the time

of the response or previous to that date. The hospital did confirm Ms. Tangeman's employment at the hospital.

18.     On October 26, 2020, U.S. Magistrate Judge Varholak signed an order pursuant to 18 U.S.C. § 2703(d) requesting Oath Holdings Inc. to provide records related to the SUBJECT ACCOUNT. On November 24, 2020, Oath Holdings Inc. produced records in response to the order.

19.     The subscriber information provided contained "Name"- Soledad Muernos, "DOB"-11/14/1974, and "Phone"- 719-661-3202. From the investigation conducted to date, I know Tangeman's DOB is 10/17/76 and a cell phone she has utilized is 719-687-4296. On October 30, 2020, at 12:36 PM, I received a phone call from 719-687-4296 and the female identified herself as Alicia Tangeman. The area code (719) is assigned to the Colorado Springs area, and initial law enforcement records checks indicate that the phone number 719-687-4296 is a Verizon cell phone that appears to be assigned to Tangeman's minor daughter. Law enforcement is awaiting records from Verizon to confirm this information.

20.     The header information provided by Oath Holdings Inc. reveals that on June 26, 2020, at 3:46 PM, an e-mail was transmitted from the SUBJECT ACCOUNT to aliciatangeman@gmail.com.   The account opening information from Oath Holdings, Inc. indicates that the e-mail account was created the same day, on June 26, 2020.  The only other header information for e-mails in the account appear to be e-mails from Yahoo ("yahoo@mail.comms.yahoo.net") to the SUBJECT ACCOUNT. The e-mail sent on June 26 is believed to be the e-mail presented to me during the July interview.

21.     Based on the foregoing, there is probable cause to believe that Ms. Tangeman created the e-mail from "Sol" presented to me during my interview of Ms. Tangeman and that she created the e-mail account itself.  The e-mail includes statements purporting to request Ms. Tangeman's participation in research. Ms. Tangeman presented the e-mail to me and my fellow investigators during our investigation of federal criminal offenses within the jurisdiction of the DEA.  Ms. Tangeman's representation that she was doing a "study" and that her story was corroborated by a third-party and that third-party's e-mail request was material to the investigation regarding allegations of Ms. Tangeman's diversion of controlled substances and her reason for accessing a patient's PCA.

22.     Further, there is probable cause that additional information from the e-mail account, such as user attribution information is evidence of the violation of the SUBJECT OFFENSE.

### ADDITIONAL BACKGROUND INFORMATION REGARDING THE INTERNET AND E-MAIL

I.      **Background:  The Internet and E-mail Accounts**

23.     The following definitions apply to this Affidavit and **ATTACHMENTS A and B** to this Affidavit.

24.     In this Affidavit, the terms "computers" or "digital storage media" or "digital storage devices" may be used interchangeably, and are intended to include any physical object upon which computer data can be recorded as well as all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices capable of performing logical, arithmetic, or storage functions, including desktop and laptop computers, mobile phones, tablets, server computers, game consoles, network hardware, hard disk drives, RAM, floppy disks, flash memory, CDs, DVDs, and other magnetic or optical storage media.

25.     I  am familiar with the Internet (also commonly known as the World Wide Web), which is a global network of computers and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions, including satellite.  Due to the structure of the Internet, connections between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state.  Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail ("e-mail").  An individual who wants to use Internet e-mail must first obtain an account with a computer that is linked to the Internet – for example, through a university, an employer, or a commercial service – which is called an "Internet Service Provider" or "ISP" (see definition of "Internet Service Provider" below).  Once the individual has accessed the Internet, that individual can use an e-mail account provided by their ISP or they can use the Internet to connect to public web-based e-mail services to send and receive e-mail.  Web-based e-mail services provide e-mail accounts that may be accessed from any computer that has access to the Internet.  In addition, the individual can access websites using web browsers to view or download content, or make purchases.   The Internet may also be used to access online groups such as chat rooms, websites, social media, newsgroups and video conferencing.

26.     **E-mail Provider**:

a.      In my experience, I have learned that Oath Holdings Inc. provides a variety of on-line services, including electronic mail ("e-mail") access, to the general public.  Subscribers obtain an account by registering with Provider.  During the registration process, Provider asks subscribers to provide basic personal information.  Most public providers do not validate the information provided, however.  Nevertheless, the computers of Provider are likely

to contain stored electronic communications (including retrieved and un-retrieved e-mail for Provider subscribers) and information concerning subscribers and their use of Provider services, such as account access information, e-mail transaction information, and account application information.

        b.        In general, an e-mail that is sent to a Provider subscriber is stored in the subscriber's "mail box" on Provider servers until the subscriber deletes the e-mail, or until a preservation letter is sent to the e-mail provider. If the subscriber does not delete the message, or if the e-mail provider preserves the content of the account pursuant to a preservation letter, the message can remain on Provider servers as long as the account remains active.

        c.        When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Provider servers, and then transmitted to its end destination. Provider often saves a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail, the e-mail can remain on the system indefinitely.

        d.        Provider subscribers can also store files, including e-mails, address books, contact or buddy lists, pictures, and other files, on servers maintained and/or owned by Provider.

27.    **Internet Service Providers ("ISPs"):**

        a.        ISPs are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer a range of options in providing access to the Internet including broadband based access via digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, that the connection supports. Many ISPs assign each subscriber an account name – a user name or screen name, an "e-mail address," an e-mail mailbox, and a personal password selected by the subscriber. By using a computer equipped with a modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system and can access the Internet by using his or her account name and personal password.

        b.        ISPs maintain records ("ISP records") pertaining to their subscribers (regardless of whether those subscribers are individuals or entities). These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISP's servers, and other information, which may be stored both in computer data format and in written or printed record format. ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use. This service by ISPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files. Typically, e-mail that has not been opened by an ISP customer is stored temporarily by an ISP incident to the transmission of that e-mail to the

intended recipient, usually within an area known as the home directory. Such temporary, incidental storage is defined by statute as "electronic storage," 18 U.S.C. § 2510(17), and the provider of such a service is an "electronic communications service." An "electronic communications service," as defined by statute, is "any service which provides to users thereof the ability to send or receive wire or electronic communications. 18 U.S.C. § 2510(15). A service provider that is available to the public and provides storage facilities after an electronic communication has been transmitted and opened by the recipient, or provides other long term storage services to the public for electronic data and files, is defined by statute as providing a "remote computing service." 18 U.S.C. § 2711(2).

28.     **Internet Protocol Address ("IP Address")**: Every computer or device on the Internet is referenced by a unique Internet Protocol address the same way every telephone has a unique telephone number. An IP address is a series of numbers separated by periods; an example of an IP address is 192.168.10.102. Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address. A central authority provides each ISP a limited block of IP addresses for use by that ISP's customers or subscribers. Most ISPs employ dynamic IP addressing, that is they allocate any unused IP address at the time of initiation of an Internet session each time a customer or subscriber accesses the Internet. A dynamic IP address is reserved by an ISP to be shared among a group of computers over a period of time. The ISP logs the date, time and duration of the Internet session for each IP address and can identify the user of that IP address for such a session from these records. Typically, users who sporadically access the Internet via a dial-up modem will be assigned an IP address from a pool of IP addresses for the duration of each dial-up session. Once the session ends, the IP address is available for the next dial-up customer. On the other hand, some ISPs, including most cable providers, employ static IP addressing, that is a customer or subscriber's computer is assigned one IP address that is used to identify each and every Internet session initiated through that computer. In other words, a static IP address is an IP address that does not change over a period of time and is typically assigned to a specific computer. A modem is an electronic device that allows one computer to communicate with another.

29.     A host computer is one that is attached to a dedicated network and serves many users. These host computers are sometimes commercial online services, which allow subscribers to connect to a network, which is in turn connected to their host systems. These service providers allow electronic mail service between their own subscribers, and those of other networks or individuals on the Internet.

30.     Contact with others online can be either open and anonymous, or private and personal in the form of person-to-person instant messages.

31.     Further, the online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. These online storage accounts are often free but can involve a charge. A subscriber assigned a free online storage account frequently can set up such accounts by

8

providing limited identifying information. Any information provided is frequently fictitious in an attempt to preserve the anonymity of the user. Consequently, even if it is known that a particular user is a subscriber of a free online storage service, the service provider frequently will have no records in that subscriber's name. Instead, the online service will only be able to identify files, that are associated with a "login," or unique, user-created identity the subscriber uses to "log on" to the online service. As set forth above, there is reason to believe that the SUBJECT ACCOUNT contains evidence regarding the efforts of ALICIA TANGEMAN to commit the SUBJECT OFFENSES, by creating the fictitious SUBJECT ACCOUNT and subsequently sending falsified e-mail from "Sol" to Tangeman to create a cover story regarding the "research study." Such a subscriber can collect, store, view and distribute electronic files directly from the online service. Consequently, files that may be evidence of a crime may also have minimal contact with the subscriber's home computer. The subscriber can also manipulate the files on an online storage service from any computer connected to the Internet. Nonetheless, evidence of an online storage account is often found on a home computer of a user subscribing to such a service. Evidence of an online storage account may take the form of passwords located in encrypted, archived[1], or other files on the user's home computer. Other evidence can also be found through unique software that may exist on a user's home computer that has been developed by the online storage service. This unique software will frequently contain evidence not only of the existence of such accounts, but the login and password.

## AUTHORIZATION REQUESTS

32. I anticipate executing these warrants under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrants to require Oath Holdings Inc. to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section II of Attachment B. Upon receipt of the information described in Section II of Attachment B, government-authorized persons will review that information to locate the items described in Section III of Attachment B.

33. This application seeks warrants to search all responsive records and information under the control of Oath Holdings Inc., providers subject to the jurisdiction of this Court, regardless of where Oath Holdings Inc. and Microsoft have chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Oath Holdings Inc. possession, custody, or control, regardless of whether such communication, record,

---

[1] Archive files are files which generally contain other files in a compressed format. Thus, Archive files may be thought of as containers containing other files. Archive files are commonly referred to as "zip" or "zipped" files.

or other information is stored, held, or maintained outside the United States.[2]

## REQUEST FOR NON-DISCLOSURE, TO RESTRICT CASE AND TO KEEP ACCOUNT ACTIVE

34. Pursuant to 18 U.S.C. §§ 2703(b)(1)(A) and 2705(b), I respectfully request the Court order Oath Holdings Inc. not to notify any other person, including the holder of the SUBJECT ACCOUNT identified in Attachment A, of the existence of this warrant. This request is made because notification of the existence of the warrant may result in flight from prosecution, and/or witness and evidence tampering. Specifically, in this case the subjects of the investigation are frequent international travelers with extensive international contacts who, if alerted, would have the means and abilities to evade the jurisdiction of United States law enforcement. In addition, alerting the subjects of this investigation might cause them to delete information on telephones or information in e-mail accounts and on computers that are not yet known to law enforcement. It might also cause the subjects to ship illegally hunted trophies and other evidence to jurisdictions outside the reach of United States law enforcement or to destroy that evidence.

35. Because the investigation is ongoing, I would further request the Court to order Provider to continue to maintain the account further detailed in Attachment A, in an open and active status.

36. I respectfully request that this affidavit and the Court's Order be RESTRICTED at level 3 until further order of this Court.

37. Oath Holdings Inc. is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computer service, as defined in 18 U.S.C. § 2711(2). This warrant application is sought pursuant to 18 U.S.C. § 2703, and seeks to require Oath Holdings Inc. to disclose certain records and information to the United States. This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order."

---

[2] It is possible that Oath Holdings, Inc. stores some portion of the information sought outside of the United States. In *Microsoft Corp. v. United States*, 2016 WL 3770056 (2nd Cir. 2016), the Second Circuit held that the government cannot enforce a warrant under the Stored Communications Act to require a provider to disclose records in its custody and control that are stored outside the United States. As the Second Circuit decision is not binding on this court, I respectfully request that this warrant apply to all responsive information— including data stored outside the United States—pertaining to the identified account that is in the possession, custody, or control of Oath Holdings, Inc. The government also seeks the disclosure of the physical location or locations where the information is stored.

38. The restriction is necessary because this affidavit reveals an ongoing investigation. Restriction will avoid premature disclosure of the investigation and guard against efforts to tamper with or destroy evidence.

## **CONCLUSION**

39. Based on the foregoing, I request the Court issue the proposed search warrant.

40. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of these warrants.

41. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of the SUBJECT OFFENSE may be located within the SUBJECT ACCOUNT respectively described in **Attachments A and B**.

42. I, therefore, respectfully request that the attached warrants be issued authorizing the search and seizure of the items listed in **Attachments A and B**.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

*/s/Christopher Eric Gann*

Special Agent Christopher Eric Gann
FDA-OCI

SUBSCRIBED and SWORN before me this  20th  day of January, 2021

HON. SCOTT T. VARHOLAK
UNITED STATES MAGISTRATE JUDGE

Application for search warrant was reviewed and is submitted by Anna Edgar, Assistant United States Attorney.